STEWART, District Judge,
concurring, in part, and dissenting, in part.
I concur with the majority in its analysis of the issue of whether the policy in question is overbroad and, thus, need not belabor that well-reasoned conclusion. However, as to vagueness, in my view, the unwritten policy in question is impermissi-bly vague, and the District Court was correct in granting summary judgment in favor of Faustin. I therefore dissent.
The Fourteenth Amendment requires a state to provide citizens fair warning of the conduct that might subject them to criminal sanctions. Giaccio v. Pennsylvania, 382 U.S. 399, 402-03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). A law is unconstitutionally vague if it fails to provide the kind of notice that will enable citizens to conform their behavior to the law. “No one may be required at peril of life, liberty or property to speculate as the meaning of *1203 penal statutes.” City of Chicago v. Morales, 527 U.S. 41, 58, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (emphasis added).
As noted by the District Court in support of its analysis, this Court has previously explained that
In the First Amendment area[,] vague laws offend three important values. First, they do not give individuals fair warning of what is prohibited. Second, lack of precise standards permits arbitrary and discriminatory enforcement. Finally, vague statutes encroach upon First Amendment freedoms by causing citizens to forsake activity protected by the First Amendment for fear it may be prohibited.
M.S. News Co. v. Casado, 721 F.2d 1281, 1290 (10th Cir.1983). Applying this analysis, the District Court concluded that the “amalgamation of various rules, statutes, and opinions [that Denver argues its policy is based upon] does not give individuals fair warning of what is prohibited. Further, the lack of precise standards permits arbitrary and discriminatory enforcement. Moreover, this very policy caused plaintiff to forsake an activity protected by the First Amendment for fear it may be prohibited.” District Court Order at 11. I concur with the District Court’s assessment.
As noted by the majority, a statute or rule may be impermissibly vague in one or both of the following instances: “First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.” Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000).
The factual and procedural history of this case illustrates the impermissible vagueness of the unwritten policy. It is not written and, thus, not available to the public. On three of the four occasions where Faustin was approached by law enforcement officials on the Perry Street Overpass, the officers themselves could not cite the specific law — let alone the “policy” in question — that Faustin was allegedly violating. On the fourth attempt, an officer did cite an ordinance and charged Faustin with violating it. However, that charge was subsequently dropped because the prosecutor realized that the ordinance cited was not applicable to her conduct. Tellingly, not one of the officers cited the policy in question — even though it is was a police department policy. As evidenced by the fact the officers encountering Faustin were unable to articulate the policy or how it applied to her conduct, the degree of vagueness presented by the unwritten policy appears to “authorize[ ] or even encourage! ] arbitrary and discriminatory enforcement” thereof. Casado, 721 F.2d at 1290.
As noted by the majority, the City of Denver itself — the entity which promulgated the “policy” — has argued significantly different versions of its policy at different stages of this litigation. The District Court astutely observed that “[a] citizen cannot be expected to follow a policy that defendants cannot even define.” District Court Order at 11.
The vagueness of Denver’s policy is further borne out by this Court’s construction of the policy over the course of this litigation. In Faustin I, we defined Denver’s unwritten policy as “prohibiting all expression on overpasses.” Having remanded this case with that definition, the majority now finds that Faustin I used “regrettably imprecise language,” that the language remanding the case was “unfortunately ill-defined,” and even notes that “there could be serious dispute about whether a ‘policy’ even exists at all.” Ante at 1196, 1198, 1197 n. 4. In other words, even this Court has not been able to clearly ascertain what the policy is, and therefore what it prohib *1204 its, over the life of this case. The fact that the promulgar of the policy and the different panels of this court construing the policy have proffered different versions of the nature, content, interpretation and even the existence of the policy, is extremely telling.
The Denver officers, the parties,[1] and successive panels of this court, have been unable to clearly and consistently divine or articulate what the policy is. I submit that, given this state of affairs, the “policy” fails to put Faustin or others on notice as to if, or how, their conduct was prohibited, and does not give a person of ordinary intelligence a reasonable opportunity to understand what conduct the “policy” prohibits. Id. Thus, it is unconstitutionally vague not merely because it is unwritten, but because it is apparently unascertaina-ble.
The majority correctly cites that “[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are . not clearly defined.” Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). I submit that this case is a quintessential example of a policy who’s prohibitions are not clearly defined and, thus, the policy is unconstitutionally void for vagueness.
In sum, I submit that the policy is unconstitutionally vague as a matter of law. For the reasons set forth above, I must respectfully dissent from the majority’s holding regarding vagueness. I submit that the District Court, following direction from this Court in Faustin I, reached the correct conclusion and should be affirmed on this point.

. As noted by the majority, "[t]he parties dispute the precise parameters of Denver's unwritten policy and refused to stipulate to any single version of the policy at oral argument.”